Jose A. **SALDANIA**, Plaintiff-Appellant,

v.

The **ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY**, a corporation, Defendant-Appellee.

No. 11835.

United States Court of Appeals
Seventh Circuit.

Feb. 25, 1957.

Joseph B. Gilbert, Chicago, Ill., for appellant.

Wm. J. O'Brien, Floyd J. Stuppi, Marshall E. LeSueur, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff is a track laborer who has been employed by defendant Railway Company since 1949. Claiming to have been injured on April 6, 1953, and again on October 25, 1954, plaintiff brought this action for damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Trial was to a jury which returned a verdict favorable to the defendant.

On April 6, 1953, plaintiff was a member of a section gang under the supervision of Louis Schultz, foreman. Plaintiff and another were unloading refuse from a gondola car. Generally, in each rubbish car there were four or five steel drums of 55-gallon capacity, which contained refuse such as wire, oil and steel scraps. The customary practice for unloading a barrel of rubbish depended upon the weight and location of the barrel. When a barrel was heavily loaded, a portion of the rubbish would be removed therefrom with a shovel, and the lightened barrel would be thrown over the side of the car.

Plaintiff was familiar with this kind of work. As plaintiff and a fellow workman attempted to throw one of the drums from the car, the plaintiff claimed he injured his back. He was treated for a period of several weeks during which time he continued to work. A doctor diagnosed his condition as either a lumbosacral strain or an aggravation of an old arthritis in his back. Thereafter, plaintiff spent two weeks in a hospital and then reported back to work on May

18, 1953. Plaintiff worked steadily thereafter without complaint until the date of his second alleged injury.

On October 25, 1954, plaintiff was working under the supervision of the same foreman, and was engaged with others in fastening together lengthwise three ties which, when bolted into position, were known as a "timber." These timbers were used to support rails at an intersection. The size of the ties from which the timber was constructed were 11 feet in length, 9 inches in height and 7 inches in width. After being bolted together the weight of each such timber, including bolts and skids, was in excess of seven hundred pounds.

On the day in question plaintiff and one Morales had completed work on two timbers and were working on a third when the foreman observed the top tie was turned the wrong way so that bolts could not be inserted in the holes which had been drilled therein. The foreman instructed plaintiff and Morales to turn or tilt the timber. No attempt was made to lift same. As the timber was tilted the lower edge thereof remained at all times in contact with the ground surface. The top tie was then turned, and plaintiff bolted same in place. Thereafter, he began digging and carrying ballast. Later that day when the Roadmaster appeared, plaintiff complained that he had hurt his back.

The plaintiff alleged his injury of October 25, 1954 was caused by defendant's negligence in failing to provide a sufficient number of men to lift and handle the ties and the timbers, and also in failing to provide tie tongs or timber hooks with which to handle the ties.

The foreman and two other section laborers testified it was customary practice for two men to roll or tilt the timbers over, and that two men were able to perform this task easily without the use of tie tongs or timber hooks. The testimony also showed that in December of 1953 plaintiff and another section laborer had worked on similar timbers at the same crossing.

In view of the claimed negligence, defendant offered to prove by demonstration how the timbers are customarily tilted or rolled by utilizing the services of two men. At the trial court's insistence, defendant laid the foundation demonstrating that the conditions at the demonstration were substantially similar to those existing at the time plaintiff claims to have received his second injury. As the demonstration was being performed before the jury, plaintiff offered no objection thereto. However, before the timbers had been brought in for the demonstration, and prior to the time the groundwork therefor was laid, plaintiff's counsel had stated to the Court that he objected to the demonstration.

Plaintiff moved for a new trial, and the *only point made before us is that it was a prejudicial error to have permitted the demonstration before the jury.*

We think it is well settled that the admission of testimony, based upon experiments, is a matter resting largely within the discretion of the trial court. Sanders v. Glenshaw Glass Co., Inc., 3 Cir., 204 F.2d 436, 439; Navajo Freight Lines, Inc. v. Mahaffy, 10 Cir., 174 F.2d 305, 310; National Pressure Cooker Co. v. Stroeter, 7 Cir., 50 F.2d 642, 644.

In the trial below, the court insisted that a proper foundation be laid before the experiment was performed. In our view the conditions of the demonstration which were viewed by the jury were substantially similar to those existing at the time plaintiff claimed to have received the second injury. Such variations as did exist could not have confused the jury. The men performing the experiment were not of exceptional strength. No one has suggested they were professional weight lifters. Nor were they of heroic physical proportions as is demonstrated by the fact that one of them was five feet three inches tall and weighed 116 pounds. We hold there

was no abuse of discretion by the trial judge.

Finding no error, the judgment of the District Court is

Affirmed.